**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

**NORMAN YOUNG,**

       **Plaintiff,**

**v.**

               **17-CV-1215**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## DECISION AND ORDER

    Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 11. Norman Young ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 13.

## BACKGROUND

    Plaintiff applied for DIB and SSI on October 9, 2013, alleging disability beginning on May 31, 2013 due to prostate cancer, collapsed low back discs, spinal tumors, high blood pressure, and high cholesterol. Tr. at 22, 148-50, 151-60, 161-62,

194.[1]  Plaintiff's application was denied at the initial level on February 10, 2014.  Tr. at 66-85, 90-105.[2]  Plaintiff appeared along with his attorney and testified at a hearing before Administrative Law Judge ("ALJ") Eric L. Glazer on July 13, 2016.  Tr. at 37-65.  On August 2, 2016, ALJ Glazer found that Plaintiff was not disabled from May 31, 2013, his alleged onset date, through August 2, 2016, the date of his decision.  Tr. at 22-32.  The Appeals Council denied Plaintiff's request for review on September 25, 2017, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 5.

[2] Plaintiff later applied for retirement benefits from SSA and was approved effective November 2014.  Tr. at 45, 163-65.

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth (and final) step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  (1) whether the Commissioner's conclusions were based upon an erroneous legal standard; and (2) whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

ALJ Glazer analyzed Plaintiff's claims using the familiar five-step process described above.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  Preliminarily, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2018. Tr. at 24.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 31, 2013, his alleged onset date.  Tr. at 24.  At step two, he found that Plaintiff had the following medically determinable impairments: status-post cryotherapy for prostate cancer and low back pain.  Tr. at 25.  However, the ALJ concluded that these impairments were not "severe" because they did not significantly limit his ability to perform basic work-related activities for 12 consecutive months.  Tr. at 25.  Accordingly, the ALJ concluded that Plaintiff was not disabled from May 31, 2013, his alleged onset date, through August 2, 2016, the date of the ALJ's decision.  Tr. at 32.

5

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. Nos. 9, 13. Plaintiff contends that the ALJ erred in finding that Plaintiff did not have a severe back impairment at step two. Dkt. No. 9-1, pp. 7-14. In particular, Plaintiff criticizes the ALJ for giving "great weight" to the opinion of Dr. James Lawrence ("Dr. Lawrence"), which was stale, given that the last time the doctor examined Plaintiff was December 17, 2010, almost three years prior to his alleged onset date (Dkt. No. 9-1, p. 10); and in "discrediting" the opinion of Dr. Dwight Lewis ("Dr. Lewis"), Plaintiff's treating physician (Dkt. No. 9-1, pp. 11-13).

The Commissioner counters that the ALJ properly found that Plaintiff failed to meet his burden to prove that he had a severe back impairment. Dkt. No. 13-2, p. 17. Specifically, defendant argues that the ALJ was aware that Dr. Lawrence last treated Plaintiff before his alleged onset date, but found the doctor's opinion nonetheless credible because he is a specialist; he treated Plaintiff three times over several months; he viewed an MRI of Plaintiff's lumbar spine; and he made essentially benign objective findings regarding Plaintiff's spine. Dkt. No. 13-1, p. 21. For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**Dr. Lawrence's Opinion**

Prior to his alleged onset date, Dr. Lawrence of Sports Medicine and Rehabilitation of WNY treated Plaintiff for low back and right elbow pain for

6

approximately three months. Tr. at 248. On September 10, 2010, Dr. Lawrence examined Plaintiff and noted that he exhibited "full range of motion in all planes of motion," was "able to heel walk, toe walk and perform deep knee bend without weakness," had "full active range of motion in bilateral hips," showed "negative straight leg raise test," and exhibited some decrease in sensation "on the left side of L3 distribution" but had "symmetrical" reflexes. Tr. at 248. He prescribed an oral steroid, Darvocet (for pain control) and an elbow brace, and recommended physical therapy. Tr. at 249. Dr. Lawrence opined that Plaintiff was "[t]emporarily mildly disabled," but his "prognosis is good," and "is able to continue regular work at this time." Tr. at 249. During Plaintiff's October 8, 2010 exam, Dr. Lawrence noted the same unremarkable objective findings regarding Plaintiff's back and gave the same positive prognosis, opining once again that Plaintiff was "able to continue regular work." Tr. at 247. In his notes of Plaintiff's December 17, 2010 exam, Dr. Lawrence reported that his lumbar sacral MRI scan revealed multi-level degenerative disc bulges at L4-S1 without stenosis and a hemangioma (a benign, non-cancerous tumor) at the T12 vertebrae. Tr. at 245. Dr. Lawrence opined, as he had after the last two exams, that Plaintiff "is able to continue regular work at this time." Tr. at 245.

In deciding that Plaintiff's low back pain was not severe enough to disable him, the ALJ gave Dr. Lawrence's opinion "great weight." Tr. at 30. Plaintiff contends that because Dr. Lawrence's opinion predated his onset of disability, it is stale, and cannot constitute substantial evidence that Plaintiff is not disabled. This Court does not agree. As an initial matter, the ALJ was clearly aware that Dr. Lawrence's treatment

7

records predated Plaintiff's alleged onset as he explicitly set forth the dates of treatment and the alleged onset date in his opinion. Tr. at 24, 30. Nowithstanding this fact, he credited the opinion because the doctor had a "treatment relationship with the claimant over several months" and his opinion that Plaintiff could continue working was consistent "with the relatively benign physical findings Dr. Lawrence observed." Tr. at 30. Moreover, Dr. Lawrence is a physical medicine and rehabilitation specialist (Dkt. No. 13-1, p. 21), whose opinion in this area (his area of expertise) must be given more weight than that from a source who is not a specialist. 20 C.F.R. §§ 404.1527(d)(5), 416(d)(5); *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. Mar. 8, 2011).

More importantly, the ALJ did not rely solely on Dr. Lawrence's opinion in finding that Plaintiff's spinal tumor and collapsed low back discs did not constitute severe impairments. Plaintiff was diagnosed with "right side T12 hemangioma" after an April 30, 2014 MRI. Tr. at 343-44. Spinal hemangioma, a non-cancerous tumor on the spine, is a benign and common condition. Dkt. No. 13-1, p. 17. There is nothing in the record showing that Plaintiff's doctors prescribed any treatment for this condition. Dkt. No. 13-1, p. 17. "The mere presence of a disease or impairment is not, by itself, sufficient to render a condition severe" within the meaning of the Act. *Ryan v. Colvin*, 15-CV-74S, 2017 WL 2240256, at *3 (W.D.N.Y. May 23, 2017); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016). Rather, the question is whether a plaintiff's impairment "significantly limits [his or her] physical and/or mental ability to do basic work activities." *See Tanner v. Comm'r of Soc. Sec.*, No. 515CV577TJMATB, 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016), *report and recommendation*

8

*adopted*, No. 515CV577TJMATB, 2016 WL 3190227 (N.D.N.Y. June 7, 2016) (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

Regarding back pain, Dr. Lionel A. Sifontes ("Dr. Sifontes") noted that on December 18, 2012, a few months prior to the alleged onset date, Plaintiff reported that although he had occasional back pain and paresthesias (tingling) in his thighs, he was working, was "active on the job," and was exercising regularly. Tr. at 257. Plaintiff reportedly used Motrin, and the doctor indicated that his "lumbar disc syndrome" was "compensated." Tr. at 258. On July 22, 2013, a few weeks after Plaintiff's alleged onset date, Dr. Sifontes noted that he had no musculoskeletal symptoms, such as stiffness or muscle pain or cramps, and no exercise intolerance. Tr. at 343. Plaintiff "denie[d] any current pain" during a physical exam by Nurse Practitioner Edith E. Pickens ("NP Pickens") on October 24, 2013. Tr. at 316. And when Dr. Lewis examined Plaintiff on October 26, 2013, he noted that he had a normal gait for his age and was neurologically intact. Tr. at 299.

Consulting examiner Dr. Donna Miller ("Dr. Miller") found that on January 29, 2014, Plaintiff appeared to be in no acute distress; had a normal gait; could walk on heels and toes without difficulty; needed no help getting on and off the exam table; was able to rise from his chair without difficulty; had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in his cervical spine; showed no

9

abnormality in thoracic spine; had 70 degree flexion, 5 degree extension, and full lateral flexion and rotation bilaterally in lumbar spine; had negative straight leg raise ("SLR") bilaterally; and demonstrated full strength in his upper and lower extremities. Tr. 335-36. On March 27, 2014, Nurse Practitioner Ruth Schap ("NP Schap") examined Plaintiff, noting that he exhibited no signs of acute distress; walked with a normal gait; had intact motor strength, normal coordination, and good mobility of all extremities; and reported that Aleve calmed down his lower back pain. Tr. at 410-11. Dr. Lewis had similar unremarkable exam findings on June 25, 2014, describing Plaintiff as "feeling well" and "ambulat[ing] independently," and noting that his back pain was "controlled since last visit." Tr. at 346-47.

Exams in December 2014, March 2015, June 2015, September 2015, and February 2016 by NP Schap and Dr. Lewis revealed normal objective findings with respect to Plaintiff's gait, posture, coordination, SLR (negative), and strength, although Plaintiff's subjective reports of his back pain varied from "uncontrolled" (June 2015) to "occasional" (March 2015). Tr. 428, 432, 438, 441, 446. Plaintiff did not even mention back pain to Dr. Lewis during his exams in September 2015 or February 2016. Tr. at 441, 446. These records fail to show that Plaintiff's back pain significantly limited his ability to perform basic work activities, which was Plaintiff's burden at step two. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

Moreover, as the ALJ noted, Plaintiff's subjective complaints of disabling back pain are belied by other record evidence. For example, Plaintiff indicated that he

was working 20 hours a week as a bartender, exercising, shopping, and doing household chores. Tr. at 43-45, 60, 209, 335, 346, 451. Moreover, Plaintiff used only over-the-counter medications such as Aleve and Ibuprophen, generally eschewing prescription pain medication. Tr. at 32; *see also* Tr. at 214 (Plaintiff reporting that Ibuprophen would relieve his pain for 6 to 7 hours). An ALJ may properly consider that a claimant does not take prescription medication, especially where the claimant engages in many activities, as Plaintiff does. *Tappan v. Halter*, 10 F. App'x 30, 31 (2d Cir. May 31, 2001); *Burgess*, 537 F.3d at 129 ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may . . . help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record . . . ."). The ALJ also noted that Plaintiff was, at all times, treated conservatively for his back pain and did not require surgery, an equally appropriate consideration. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. Apr. 2, 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy).

For these reasons, this Court finds that the ALJ did not err in considering Dr. Lawrence's 2010 opinions, as well as other evidence in the record, in concluding the Plaintiff did not have a severe impairment under the Act.

**Dr. Lewis's Opinion**

Plaintiff's medical history includes a Residual Functional Capacity Questionnaire from June 29, 2016, in which Dr. Lewis opined that he had restrictions in walking, sitting, standing, twisting, and climbing stairs due to chronic low back pain. Tr. at 354-59. Plaintiff contends that the ALJ gave this opinion "little weight" without providing "good reasons" and this error requires remand. The "treating physician" rule requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess*, 537 F.3d at 128. Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides to not give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." *Eckland*, 349 F. Supp. at 242 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted). Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted). Of course, the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

In Plaintiff's case, the ALJ gave Dr. Lewis' restrictive assessment "little weight." Tr. at 30. Contrary to Plaintiff's argument, this Court finds that the ALJ gave sufficiently "good" reasons for doing so. Specifically, he reasoned that Dr. Lewis's

opinion "appears to be based on claimant's own self-reported symptoms" and "not on Dr. Lewis'[s] own independent examination." Tr. at 31. This is clear from the questionnaire where Dr. Lewis wrote "Patient reported . . ." or "reported . . ." when answering questions about Plaintiff's various abilities. Tr. at 355-56. "An ALJ is not required to give controlling weight to [a] treating physician's opinion where 'it was unsupported by the objective medical evidence' and 'based on [the plaintiff's] subjective complaints.'" *Fagner v. Berryhill*, No. 14-CV-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017) (internal citations omitted).

The ALJ also noted that several of the limitations identified by Dr. Lewis (such as being unable to maintain attention and concentration to perform even simple tasks) "are inconsistent with the claimant's current employment . . . working four days a week for five hours a day as a bartender." Tr. at 31. He also noted that Dr. Lewis's very restrictive RFC was inconsistent with the record as a whole and was not supported by his own clinical treatment notes (detailed at length above) in which he stated that "claimant is feeling well and his back pain is well controlled." Tr. at 31, 346. This was not erroneous. *Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (holding that the ALJ appropriately declined to give great weight to a portion of the treating physician's opinion, which the ALJ found to be inconsistent with the doctor's examination findings and other information in the record).

Accordingly, this Court finds that the ALJ articulated sufficiently good reasons for affording Dr. Lewis's opinion less than controlling weight.

## **CONCLUSION**

For the reasons stated herein, this Court finds that the ALJ's decision is free from legal error and supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is hereby GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:　　Buffalo, New York
　　　　　　June 24, 2019

　　　　　　　　　　　　　　　　　　*s/ H. Kenneth Schroeder, Jr.*
　　　　　　　　　　　　　　　　　　**H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**